Case number 13-6322, United States of America v. Arthur Charles Smith. Oral argument not to exceed 15 minutes per side. Mr. Henry for the appellant. Good morning. May it please the court. My name is Brad Henry. I represent the appellant Arthur Smith. I would like to reserve three minutes for rebuttal. This case deals with the residual clause of the career offender guideline. In the court below, Mr. Smith argued that common law robbery under North to a predicate of the career offender guideline because, one, it is a divisible statute. I think the law is clear that when a divisible statute such as robbery is in play, the court can look to the Shepard analysis. In this instance, Mr. Smith entered an Alford plea and did not admit any facts. However, the court below looked at the residual clause of the career offender guideline to determine whether this offense was, in fact, a crime of violence under the career offender statute. Subsequent to us submitting our brief, this court came out with an opinion, United States v. Mitchell, which deals with robbery. The Tennessee statute defined robbery as the taking from a presence of another through violence or fear. In that case, this court likewise turned to two clauses in the career offender guideline. One, the use of physical force clause, and two, the residual clause. Under North common law robbery is defined as the felonious taking from a person of another or in his presence against his will by violence or fear. Force as defined by that statute and or fear can be either actual, which involves physical force, or constructive, which is any demonstration of force or other means that puts a person in fear and or takes away their free will. Under the North Carolina statute and looking at the use of physical force clause, the definition of common law robbery includes both a taking from the presence of another, but the definition also gives an alternative where the the presence of another contrary to our common thoughts about robbery. If you had a situation where there was just a taking of property, a forcible taking, I guess, of property from the presence of another that could be tantamount to common law larceny, would that still count as a crime of violence under the scenario that you've painted? Your Honor, and I think that question is addressed by the Fourth Circuit in United States versus Carmichael, which are cited in the court below and in the briefs. But larceny under under North Carolina law by definition requires the presence of both the person who is being taken from and the person who is taking. And so in that instance, I think under the residual clause, at least, that would and has been determined to qualify as a crime of violence because under Begay, it leads to a situation where some kind of resistance force can ensue. And so there is the ever present danger there. Because that would be different than than just the, I guess, garden variety common law larceny, which would be the taking and carrying away of property of another. Right. That's correct. With or without the presence. Let me, maybe I misheard you, but I thought you were trying to read something that said that the robbery didn't have to be from the person or presence. And I thought the the definition is felonious non-consensual taking from the person or presence of another. So that the the reason that these kinds of crimes have usually been held, including by the Fourth Circuit, to present the serious risk of injury is that you are either using violence on the person or in his presence or putting them in fear of it, which presents the risk. So did I mishear you about the person or presence? I think it's a it's a very small distinction. But when you look at the North Carolina definition of common law robbery, it is, the court is correct, it is a felonious taking. But then the next two lines are sort of, it is an or, it is a disjunctive. It is from the person of another or in his presence. And because that disjunctive exists, and they define that in his presence. We're talking, I guess, as we're talking common law robbery, we don't have a statute to look at. I'm looking at State v. Bell, which simply reads it as from the person or presence of another. But does that really make much difference in the sense that, as I understand the difference, it's you got a $20 bill hanging out of your pocket, and I take it, I've taken it from your person. You've got a million dollars a foot from your hand, and I grab it, I've taken it from your presence. Normally you would resist, right, if you could. For a good lawyer, for a million dollars. I think the distinction here is, and the argument that we made in the court below, and I think something that perhaps is unique in this instance, because North Carolina has defined common law robbery, because it is in fact common law robbery in so many different ways, that we have opened up the common law definition of robbery in North Carolina to include not only the taking of the presence of another, but if you look at the statute, you could in fact carry out that robbery in other ways that do not require the physical presence of the taker with the takee. So for instance, if I was taking from another person outside of their presence, I could put them in fear of a force as any other menace or any other thing that you can think of, and so that includes, I believe. So you're really reading out the person or presence. You're saying it can be the taking of money or personal property by means of fear, period, any time. Well, I think that's true. I thought you were going to emphasize the fear, and certainly all of the North Carolina fear cases that I have, is the taking of property from the person or presence. Do you have any case where a person is convicted of common law robbery, where he did not take the property from the person or presence? There is no case that I can find, Your Honor. And I understand that the law says, in fact, that when you're looking at these definitions, you have to look at what the Supreme Court of that say, says in definition of that. But taking from the purse of another, when you read out, or in their presence, that's divisible. So you can either be in their presence, or you can take it from their purse of a person. Yeah, that's what we just said about the $30 bill versus the $1,000,000... Correct. Two separate things. So the taking from that person could be some type of a, you call them up and say some sort of threat that robs them of their free will, and say, if I do this to you, I want you to leave your $1,000,000 on your front doorstep, and I want you to leave the house. When you do that, I'm coming to get the money. It can still be the taking from that person, because that person is then leaving that money for another individual to come and get. It does not require their presence, which then takes them out of the situation where there is the likelihood of a resistance or some kind of melee to occur. Thereafter, that removes it in the residual clause from the Begay analysis, because Begay, obviously, and in this particular instance, requires that there has to be some sort of violence to ensue. You know, the cases, obviously, that the courts always look at are larceny, which all the cases that have looked at it require the presence of an individual being taken from and the person taking. Same thing with burglary. Burglary requires the presence of a person in a home, the person who is committing the offense. Their physical presence has to be there. My argument is that North Carolina definition of common law robbery, because it is common law and not defined by statute, is broad enough to include these other types of takings from a person. I mean, the part about taking from the person, I would think that is language that goes back into England and pretty common across the country, so if your argument is correct, wouldn't that pretty much take all of the common law robbery statutes out of crime of violence, if you can interpret taking from his person to mean it is not taking it from his person, it can be, as you said, miles away, hundreds of miles away. Do you have any case in any state that adopts that interpretation? Not that I've been able to find, Your Honor. And I admit, it's a fairly broad... Some government somewhere might like it, some government prosecutor might like it, but I don't think that they would apply anywhere. I don't disagree with the court. However, in looking at just North Carolina law, which defines the statute for common law robbery here, I think that the taking of the presence, and then looking to the fear element as well, fear in North Carolina does not require any physical force at all. The very definition of that fear, in conjunction with whether it has to be in the presence or not, is any type of menace. One of the cases says that fear can be accomplished if the transaction is attended with such circumstances of terror, such threatening by word or gesture, as might induce a man to part with his property for the sake of his person. That is true. It does say that. But if it is a piece of paper that says, give me your money or I will kill you, doesn't that have the same risk of physical injury as grabbing it? Because he may well resist, and you have threatened violence. That's where the fear is. That's true. But that piece of paper likewise could say, give me your money or I will... Reveal you cheated at summer camp. Correct. I'll blackmail you or some of those other things. I see my time has run out. Your time has expired. You have three minutes for rebuttal. May it please the court. My name is Luke McLaurin and I'm here on behalf of the United States. Do you concede, first of all, that common law robbery under the North Carolina statute is a divisible offense, that it can be committed by either violence or by fear? Yes, and we state that in our brief. Okay, and if one concludes that Mr. Smith committed the robbery by fear rather than violence, do you lose? No, not at all. Our position, I mean, we acknowledge that in this case, we're dealing with a divisible offense. And we also acknowledge that we're dealing with a situation where there was an Alford police, and the Shepard documents in this case don't indicate which particular variant of the offense the defendant committed. That doesn't mean that the government loses. All that means is that we have to show that every possible variant of the offense is, in fact, a crime of violence. And it's our position that every possible variant of North Carolina common law robbery is categorically a crime of violence under either the residual clause, the enumerated offense clause, or under the use of physical force clause. Now, I think that the clearest way to get to the answer, just based on this court's precedence that's out there, would be the residual clause. I think the enumerated offense clause would also be a very clear way to get there as well. But I'll start with the residual clause. And I want to begin with parsing what the offense is. I won't say statute because we're dealing with a common law offense here. But I think that the clearest definition, and this is a definition cited by both parties in the brief. I'm quoting here from State v. Moore, which is a North Carolina Supreme Court case from 1971. This definition is quoted several times in later North Carolina Supreme Court cases. But the definition says, Robbery at common law is the felonious taking of money or goods of any value from the person of another or in his presence against his will by violence or putting him in fear. Now, I would submit that there are essentially three elements to that offense. There's the taking part. There's the from his person or in his presence, which I would describe as the second element. Arguably a divisible element because it could be, as we talked about, as you just talked about, from the person or in his presence. And then the third element, by violence or putting him in fear. Now, I want to begin by just addressing that second element because it wasn't really discussed in the briefs. It was raised for the first time here at oral argument. But this whole notion, I'm frankly very confused by counsel's argument because there is no North Carolina case that I am aware of that suggests that the taking can be outside of a person's actual presence. I mean, the language of the cases says from the person of another or in his presence. And in fact, when you look at the description of the violence or putting him in fear element, they talk about that the putting him in fear requires a threat that is going to induce somebody to part with property for the sake of his person, which suggests that there's some sort of in-person or presence interaction that's at issue in the offense. So I don't think there's any support in any North Carolina case law for suggesting that this offense could occur outside of the person's presence. So I think that's clearly an element of the offense. And in fact, if you look at the Fourth Circuit cases that have discussed this offense, they relied on that, that understanding of North Carolina law that this offense is committed in the presence of the person. So I think the really key question here, I don't think there's really any dispute that turning to that third element of the offense, the by violence or putting him in fear, I don't think there's any serious dispute that if a robber is committed by violence, that that is a situation that is going to create a serious risk of potential injury to another. I think the question is whether the putting him in fear element does. And I think if you look at this court's case law, the conclusion is that it must. And I think the clearest case is Mitchell. If you look at Mitchell, that's a recent case dealt with the Tennessee robbery statute, which contains on its face an identical, I mean, essentially identical definition of robbery. I don't think there's really any meaningful way to distinguish between these two definitions. And the court in Mitchell found that that definition qualified under both the use of physical force clause, but also under the residual clause. And it said, look, when you have a robbery, that's inherently a situation that creates a risk of injury to another, whether it's from the force that might be used by the person who's committing the robbery, or from the fact that the person who's being robbed is likely to resist. Even if they're being threatened, they're still likely to resist. And that's what this court said in talking about larceny of a person back in 1998 in United States versus Payne. They said, look, when somebody tries to rob you, you're likely to resist. That resistance itself is what's likely to create violence. And that's the same kind of risk that is at play in one of the enumerated offenses of burglary in the crime of violence definition, also in the armed criminal context. And the Supreme Court has said, look, the main risk of burglary arises from the fact that there could be a potential confrontation. And this court recently clarified in the Timothy Phillips case, United States versus Timothy Phillips, which was decided I think a couple months ago, that burglary involves a risk of confrontation not just with the person being burglarized, but with bystanders. And I would say the same thing's true of robbery. It's not just the risk that's going to come from the fact that the person who's robbing the individual might engage in violence, but it's the fact that the person who's being robbed might resist. That's what creates this inherently dangerous situation. And I think that that's been recognized by this court in Mitchell. It's been recognized by this court in Taylor, United States versus Taylor, United States versus Payne. Both involved larceny offenses. Let me ask you this. We've sort of adverted to it on the side that it is conceivable that there could be fear of something other than actual violence. This fear of, you know, your adversary called it blackmail. And how does that play out here? That is, you have a divisible offense. We all agree with that. And when you're determining divisibility, you can get very creative. Because if there is an element that is bizarre, you still have to find it divisible. But when you talk about how the offense is committed, can you use, you know, something like blackmail, or do you talk about the ordinary way that you put someone in fear? Well, I have actually three responses to that. The first response is if you look at the Supreme Court's decision in James, the analysis says that you're supposed to look how the offense occurs in the ordinary case. And, in fact, there's, you know, this court's decision in Taylor, this court's decision in Payne has basically said, look, just because you can hypothetically imagine a scenario in which this might not involve violence, that doesn't necessarily mean this isn't a crime of violence. That's a way of meeting the elements. That's what I'm distinguishing, that we get very creative in dividing the statute, but we don't get very creative in looking at the possible ways to do it. Well, I think there is some limit on the creative, the court's creative capacity to divide the statute. If you look at Deskamp's opinion, the Supreme Court said you can't just, you know, sort of, the courts can't just hypothetically sort of divide the statute however they might imagine. In our case, you have to look at the language. We believe it's divisible, so we don't need to go beyond that. But I think more important here is if you look at North Carolina law, North Carolina law doesn't suggest that it's enough to just have some sort of threat of blackmail. North Carolina law suggests that the threat has to be something that involves a threat to the person, something that's going to make the person fear that their bodily injury is in danger. And I think here the- Is that from the Sawyer case or what? Yes. The key case here is State v. Sawyer, which is a 1944 North Carolina Supreme Court case. It's actually, the same quote is repeated several times in later Supreme Court cases, but I'll point to Sawyer as the source of it. And the key part of it is, no matter, and I'm just quoting here, no matter how slight the cause creating the fear may be, or by what other circumstances the taking may be accomplished, if the transaction is attended with such circumstances of terror, such threatening by word or gesture as in common experience, are likely to create an apprehension of danger and induce a man to part with his property for the sake of his person, the victim is put in fear. And I think that that's what, I mean, the other part of it says, under constructive force are included all demonstrations of force, menaces, and other means by which the person of rob is put in fear sufficient to suspend the free exercise of his will or prevent resistance to the taking. Sorry, what are you quoting from? That's all from State v. Sawyer. And I think when you look at that definition in Sawyer, what they're talking about, it's essentially the same thing that this court in Mitchell said, the Tennessee Supreme Court said you're talking about under Tennessee law, which is that this putting in fear element requires fear that something's going to happen to you, right? That you're going to be hurt. You know, this is, after all, robbery. We're in the presence of another person. And so the fear element is something that requires you to think, hey, I'm in danger here, so I'm going to give you my money. That's what the North Carolina law says. So I think that when we look at the element of North Carolina law, I don't think it really allows for this kind of extortion that you use in your hypothetical judge box. So that would be one response. The other response is we are supposed to look at the ordinary case, as James said. And finally, I would point out that even if this court were a little bit hesitant to go the residual clause route, I think it's absolutely clear that North Carolina common law robbery is robbery, which is a generic form of robbery, which is one of the enumerated offenses under the crime of violence definition. And the only reason I suggest that that might be a less straightforward route is simply because the analysis that this court has to go through to determine whether an offense is one of those enumerated offenses when it's in the application notice, you have to look at the generic definition. And that involves comparing the law of all 50 states. And I think this court's task is made simpler by the fact that other courts of appeals have done that, most notably the 11th Circuit in the United States versus Lockley, the 5th Circuit in the United States versus Sante Esteban Hernandez. Both of those cases are cited in our brief. And basically they say that the main difference between the majority of jurisdictions and minority of jurisdictions in the states is whether the robbery can be accomplished by violence or putting in fear or whether it just requires some sort of violence. The minority position is violence. And in fact, most of the courts have said that the generic definition of robbery is essentially identical to North Carolina's definition of robbery. It involves a felonious taking of property from the presence of another by means of violence or fear. And I think when you look at that generic definition, this North Carolina offense clearly qualifies as robbery under the crime of violence definition. I would also want to just point out that to the United States' knowledge, there is no court that has considered this offense that has concluded that it is not a crime of violence. In fact, there are panels from the 4th Circuit and the 5th Circuit that have both concluded that it is a – actually, the 4th Circuit, the 5th Circuit, and several district courts have concluded that it is a crime of violence. Some have concluded that it's a crime of violence under the residual clause. Some have concluded it's a crime of violence under the enumerated defense clause. And some have concluded it's a crime of violence under the use of physical force clause. And those are all cited in our brief. Unless there are any other questions, the United States respectfully requests that the judgment be affirmed. Thank you. We have three minutes for rebuttal. Thank you, Your Honor. Just to address a few things that counsel mentioned, he suggested that robbery being enumerated offense would meet the generic definition of robbery. I think that goes back to we've just all agreed that robbery in this instance is divisible and must go through the Shepard analysis and or be found through the use of force clause or the residual clause. He's asking this court to redefine generic robbery in contrary to what every other court in the country has found for many years now. The question I guess when he was talking about and to look at the questions this court was asking me perhaps can be answered best by a question in return is how can you take from the person of another without being in their presence? I thought we just went through that. Taking from the person is like literally it's in my hand, it's in my pocket. In the presence, it gets a little scary if it's half a block away, but mostly it just means that to be robbery I don't have to have it in my hand. I can be sitting in my couch with my diamond ring over on the nightstand. That's pretty easy, isn't it? Well, but then if you look at... It's not from your person, but it is in your presence. I said that the tricky case would become if in my presence is on the far side of my Olympic-sized swimming pool, then you'd have a problem, but that's not what we're talking about here. Also, counsel suggested that there was some discussion about Sawyer and Norris. I think Sawyer had the definition where it was the taking from another person where they did it for the sake of their person. The second portion of that where we discussed force being demonstrations of menaces or other things that put a person or take away their free will, I believe came from North Carolina versus Norris, which expanded that definition in Sawyer, if I'm looking at that correctly. So not only does it include the fear that is removing it from the person of another, but Norris then expands that to include all other menaces and types of things that would remove a person's free will. So it doesn't just include the threat of physical force or violence, but includes all of those other things. For instance, what we talked about is the generic definition of blackmail. I see that I'm out of time. Thank you, Your Honors. Thank you very much, and Mr. Henry, thank you for taking this case under the Criminal Justice Act. It's a service to our system of justice, and the court appreciates it. That case will be submitted.